BOUTALL, Judge.
This appeal arises from a judgment of the trial court which dismissed the third party demand for reimbursement made by the plaintiff’s uninsured motorist (UM) carrier against the defendants.
On or about October 15, 1976, Glenn Singleton was travelling in his automobile in an easterly direction on Louisiana Highway 18 accompanied by two guest passengers, namely Maud Allen and Elys LeBeauf, when Rudolf Kindler, who was travelling in a westerly direction, crossed the median of the highway thereby colliding with the Singleton vehicle. Allen, LeBeauf and Singleton sustained personal injuries in the collision. On January 17, 1977 Singleton filed suit against Kindler and his alleged insurer Allstate Insurance Co. (hereinafter referred to as Allstate) seeking recovery of damages for the personal injuries he received. Allstate answered denying that there was any policy in effect on behalf of Kindler on the date of the accident. Thereafter on May 20, 1977, American Fidelity Fire Insurance Co. (hereinafter referred to as American Fidelity) the liability (UM) carrier for Singleton entered into a settlement agreement with LeBeauf, one of the guest passengers. In entering this agreement, American Fidelity asserts it was operating under the belief that Kindler was indeed uninsured at the time of the accident as alleged by Allstate. On September 27, 1977 Singleton amended his original petition by naming his insurer American Fidelity as an additional defendant, seeking recovery under the UM provisions of his policy. Subsequently, a separate suit was filed on October 17, 1977 by Allen, the other guest passenger, against Singleton, his insurer American Fidelity, and Kindler. This suit was consolidated with the original Singleton action. Thereafter on December 14,1977 American Fidelity filed a third party petition seeking indemnity and/or subrogation from Kindler for any damages that the former may be held liable for unto Singleton and for the sum of $2422.50 paid by American Fidelity to LeBeauf which was allegedly due under the UM provisions of the Singleton policy. One year later American Fidelity filed a second third party demand against Allstate seeking indemnity and subrogation also for the amount it paid to LeBeauf pursuant to the UM provisions of the Singleton policy. On April 8, 1980 a settlement agreement was entered into between Allstate and the two plaintiffs, Singleton and Allen for the sums of $3,358.74 and $5,000 respectively, all within the liability limits of the Allstate policy of $10,000/20,000. Accordingly, the only issue remaining for trial was the third party demands brought by American Fideli *1315 ty against Allstate and Kindler to recover its payment to the passenger LeBeauf.
Upon trial of this matter the lower court entered judgment dismissing both of the third party demands. From this judgment American Fidelity has appealed devolutive-iy-
On appeal the issue before us is whether American Fidelity, as the UM carrier for driver Singleton, is entitled to reimbursement by the defendant Kindler and/or his liability insurer Allstate for the sum which American Fidelity paid to one of the guest passengers, when Allstate had a liability policy in effect which would have covered the claim by the guest passenger.
Several different theories have been asserted for the purpose of permitting recovery by American Fidelity. One of them concerns the statutory scheme governing UM coverage in Louisiana. LSA-R.S. 22:1406(D)(4) provides for the reimbursement rights of the UM carrier who makes payment pursuant to a policy of UM insurance. It states:
‘ “D. The following provision shall govern the issuance of uninsured motorist coverage in this state.

‘ “(4) In the event of payment to any person under the coverage required by this Section and subject to the terms and conditions of such coverage, the insurer making such payment shall to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer.” ’
Under this statute when a UM carrier makes payment pursuant to the terms of a policy of UM coverage, the UM carrier can recover from a tortfeasor any proceeds of a settlement of judgment that was entered into in favor of the insured and against the tortfeasor. The statute is silent and does not provide a right of recovery by the insured from a tortfeasor or person legally responsible for the bodily injury in cases other than settlements or judgment in favor of the insured.[1]
In the matter at hand American Fidelity paid benefits to the guest passenger Le-Beauf allegedly pursuant to the terms of its UM policy with the plaintiff Singleton. There were no proceeds paid to LeBeauf by the defendant tort feasor Kindler or his liability insurer Allstate. Hence, by virtue of the terms of the statute governing the reimbursement of UM carriers for payments made in connection with UM policies American Fidelity is not provided any recovery from Kindler or Allstate.
A second theory argued before us concerns the concept of subrogation, both conventional and legal. Regarding conventional subrogation, Louisiana Civil Code Art. 2160 states in pertinent part:
“ * * * * The subrogation is conventional:
*1316 1. When the creditor, receiving his payment from a third person, subrogates him in his rights, actions, privileges, and mortgages against the debtor; this subro-gation must be expressed and made at the same time as the payment.”
Upon a review of the record in this matter we find that a general release was entered into between LeBeauf and American Fidelity and Singleton, but in no way does this release establish, intimate, or even hint at a subrogation in favor of American Fidelity of the rights, privileges, and claims which LeBeauf may have against the defendants Kindler and Allstate. Hence, no conventional subrogation exists which would permit American Fidelity recovery.
Louisiana Civil Code Art. 2161 provides those instances in which legal subro-gation takes place. It states:
“ * * * * Subrogation takes place of right:
“1. For the benefit of him who, being himself a creditor, pays another creditor, whose claim is preferable to his by reason of his privileges or mortgages.
“2. For the benefit of the purchaser of any immovable property, who employs the price of his purchase in paying the creditors, to whom this property was mortgaged.
“3. For the benefit of him who, being bound with others, or for others, for the payment of the debt, had an interest in discharging it.
“4. For the benefit of the beneficiary heir, who has paid with his own funds the debts of the succession.”
Of the four different instances of this type of subrogation the only one with any possible application in the matter at hand is the third one. Here American Fidelity and Singleton entered into an agreement with Le-Beauf, one of the guest passengers, wherein the latter received a sum of money in exchange for the complete release of the former. Thus, the release was for the benefit of American Fidelity and Singleton and not for the benefit of the other debtors, namely the defendants Kindler or Allstate. Moreover, American Fidelity as the UM carrier was not bound with Kindler and Allstate because it could not be liable until the policy limits on the Allstate policy had been exhausted. Hence, Louisiana Civil Code Article 2161(3) is not applicable.
A final theory presented concerns the reimbursement of a third person who makes a payment thereby extinguishing the obligation of another. Louisiana Civil Code Article 2134 states:
“ * * * * An obligation may be discharged by any person concerned in it, such as a coobligor or a surety.
“The obligation may even be discharged by a third person no way concerned in it, provided that person act in the name and for the discharge of the debtor, or that if he act in his own name, he be not subrogated to the rights of the creditor.”
Upon a review of the record in this matter we find that this theory of reimbursement is not applicable. The payment made by American Fidelity to LeBeauf was made in the names of American Fidelity and its insured Singleton and not in the names of the other debtors, Kindler and Allstate. American Fidelity was both the UM carrier and liability carrier of Singleton. There is an obvious benefit for paying the passenger and obtaining a release of all claims against the driver and his insurer. There is no showing that this was a UM settlement.
In view of the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.

. In Nieman v. Travelers Ins. Co., 368 So.2d 1003 (La.1979) the Supreme Court was faced with the issue of “whether a ‘consent to settle clause’ in an UM policy is valid and operative, and whether a plaintiff, who without his UM carrier’s consent settles and releases an unde-rinsured tortfeasor and that tortfeasor’s liability insurance carrier, has defeated his cause of action against the UM carrier.” In the course of the opinion the court by dicta interpreted LSA-R.S. 22:1406(D)(4). The court stated:
“On the basis above of statutory interpretation, we find that the UM insurer has no right under R.S. 22:1406(D)(4) other than the right to reimbursement from such proceeds, if any, that the insured in fact recovers from the underin-sured tortfeasor”.
If by this finding the court intends to say that the silence of the statute in not recognizing other methods of recovery acts as a bar to recovery under other situations, we believe that the statute is being too strictly interpreted. Subsection (4) appears designed to permit the UM insurer to recover from its insured out of that which he collects from the tortfeasor to the extent that the insured is, in effect, recovering twice. The interpretation that this is the only method of recovery available to the UM carrier will cause the UM carrier to require a suit by its insured against the tortfeasor before it will enter settlement, just the type of situation that the court was seeking to avoid in Nieman.